## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RHONDA K. MEYER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-116 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, Plaintiff Rhonda K. Meyer filed Summary Judgment Motion [Doc. # 12] and a brief in support [Doc. # 13].  Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, filed a Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment and Brief in Support Thereof [Doc. # 14].  The motions now are ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendant's motion should be **granted** and that Plaintiff's motion should be **denied**.

# I.    BACKGROUND

## A.    Procedural Background

Meyer filed an application for disability benefits with the Social Security Administration ("SSA") on April 28, 2011, alleging disability beginning on March 31, 2009.  After the claim was denied initially and on reconsideration, Meyer requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the denial of benefits.

On March 20, 2013, ALJ Wade B. Morrison held a hearing in San Antonio, at which Meyer appeared by video from Victoria.  R. 339-78.  At the hearing Meyer, through her attorney, revised her alleged onset date of disability to February 17, 2008. A vocational expert and medical expert each appeared and testified.  On April 23, 2013, the ALJ issued a decision finding that Meyer was not disabled during the relevant period.  R. 14-21.

On November 15, 2013, the Appeals Council denied Meyer's request for review.  R. 4-6.  Meyer filed this case on January 17, 2014, seeking judicial review of the Commissioner's denial of her claim for benefits.  Complaint [Doc. # 1].

## B.    Factual Background

Meyer alleges disability based on past L4-5 spinal fusion; degenerative disc disease; fibromyalgia; colitis; anxiety; panic disorder; depression; heart disease; and

angina.  Based on her earnings record, Meyer met the insured status requirements for disability benefits through March 31, 2008 (her "date last insured").  When she filed her application for disability benefits, Meyer alleged disability beginning on March 31, 2009.  At her administrative hearing, however, Meyer's attorney amended her alleged onset date to February 17, 2008.  Therefore Meyer's period of eligibility is approximately six weeks, from February 17 through March 31, 2008.[1]

Meyer previously was found disabled by the SSA from February 1993 through June 2001, and received disability benefits during this period.  The basis for this disability finding is not in the current record.  *See* R. 355.  However, the ALJ's opinion states that Meyer previously had L4-5 spinal fusion surgery, which was performed after she slipped and fell in 1993.  R. 19 (citing records).  The opinion further states that, in 2001, Meyer returned to work as a fast food manager and earned over $13,000.  R. 18 (citing records).  At that time, Meyer's disability benefits ended because of her earnings.

The administrative record in this case contains some evidence that Meyer received medical treatment in 2005 and 2006, well before her eligibility period.  In October 2005, Meyer was treated for depression and anxiety by Walter Hartman,

---

[1]     Meyer apparently has applied in the past for Supplemental Security Income ("SSI"), eligibility for which is not dependent upon insured status requirements.  However, no SSI application is before the Court in the current appeal.

M.D., presumably her family physician.  R. 207-208.  In 2006, Meyer continued treatment with Dr. Hartman for depression and anxiety, R. 220-21, and also was treated at the Gulf Coast Medical center for chest pain and other conditions.  R. 182, 193, 205.  On May 22, 2006, Meyer was treated by Dr. Hartman for a kidney infection and stress disorder.  R. 220.

The record contains no evidence of any medical treatment between May 22, 2006 and July 2008.  Accordingly, there are no records from the relevant period, which is from February 17 through March 31, 2008.

On July 7, 2008, more than three months after Meyer's date last insured, Dr. Hartman signed a one-page "Physician's Statement" form and checked a box stating that Meyer was unable to work because she was permanently disabled.  R. 276.[2]  On the form, Dr. Hartman listed Meyer's primary diagnosis as degenerative disc disorder and her secondary diagnosis as fibromyalgia.  The record does not contain any evidence that Hartman had treated Meyer since May 22, 2006.

On July 19, 2008, approximately four months after her date last insured, Meyer received treatment for chest pain and shortness of breath at the Emergency Room of the Gulf Coast Medical Center.  She was discharged on the same day with instructions

---

[2]        Although the document appears to be dated in 2009, after some discussion at the hearing the ALJ concluded that it actually was from 2008.  R. 369.

to continue on previous pain medications and Xanax, and to follow up with Dr. Zorrilla within several days.  Meyer received chest radiography that showed a 10 mm nodule in the left lung that warranted further workup with a CT examination.  R. 182-90.  On July 24, 2008, Meyer received an echocardiography examination which yielded mostly normal results,  R. 229-30.  Approximately eight months later, on March 31, 2009, another radiography examination showed that Meyer's heart was normal size and unchanged since July, 2008, and that her lungs were clear except for "partially calcified granuloma."  R. 321.

On September 23, 2008, approximately six months after her date last insured, Meyer saw Joseph Long, M.D., for a consultative physical examination.  R. 238-45.  Dr. Long listed Meyer's chief complaints as fibromyalgia, back pain, shoulder pain, and arthritis.  He stated that she had chest pain that was relieved by nitroglycerin.  He also noted severe depression and a past suicide attempt.  Upon examination he assessed a slightly decreased range of motion in Meyer's right shoulder, probably due to arthritis.  He noted a limited range of motion in her lumbar spine.  He stated that Meyer had a full range of motion in her cervical spine, but that movement was painful. In response to specific questions posed, Dr. Long opined that Meyer's ability to sit and stand was slightly compromised; that she would have "great difficulty" moving about, lifting, and carrying; that she could handle objects, hear, and speak; that her

gait was "slow and hesitant"; that there was no evidence of muscle atrophy or reflex changes; and that she had full grip strength.  He further stated that Meyer did not appear to be in pain and easily got out of a chair and off the  examination table.  R. 242-43.

Two days later, on September 25, 2008, Meyer saw Lowell Adams, Ph.D., for a consultative psychological examination.  R. 231-37.  Dr. Adams noted clear and normal speech, average intelligence, and adequate social skills.  He stated that the background Meyer had provided was disorganized and difficult to follow.  Meyer complained of depression, anxiety, poor coping skills, anger management issues, and panic attacks.  She stated that mental illness was present in her family and that she had been sexually abused in her childhood.  R. 233.  Meyer reported extremely limited activity outside her home, disturbed sleep, and an erratic appetite.  She stated that her mobility and physical pain had decreased in the past year.  R. 234-35.  Dr. Adams noted impairments in social functioning and activities of daily living.  R. 235.  Meyer reported that she had never seen a psychiatrist but had current prescriptions for Zoloft and Xanax.  R. 234.  Dr. Adams assessed her with significantly below average abstract reasoning skills, slight difficulties in memory, moderate impairment in concentration, and average judgment and insight.  R. 236.  He concluded:

> Given [Meyer's] overall functioning, it is questionable whether she could

> sustain the physical stamina and emotional stamina necessary to remain
> gainfully employed.   Overall, medical and psychological concerns
> appear to be significantly debilitating.   For these reasons, the prognosis
> for occupational adjustment in the near future is poor.

R. 236-37.  He diagnosed her as suffering from major depression and panic attacks,

with a Global Assessment of Functioning ("GAF") score of 52.  R. 237.

In October 2008, Charles Lankford, Ph.D., on behalf of the SSA reviewed Dr.

Adams' examination records and other medical evidence.  R. 258-71.  Dr. Lankford

concluded that "major depression" (Listing 12.04) was present but that Meyer's

symptoms did not precisely satisfy the listing criteria; he reached the same conclusion

for "panic disorder" (Listing 12.06).  R. 261, 263.  He noted that there was no medical

evidence in the record between May 2006 and July 2008.  He reviewed the assessment

and prognosis of Dr. Adams but stated there was "very insuff[icient] [medical

evidence] in the file to justify any onset prior to 2008."  R. 270.  He then suggested

an onset date on July 1, 2008, three months prior to Dr. Adams' consultative

examination.  R. 270.  On a separate form, Dr. Lankford assessed Meyer's mental

residual functional capacity ("RFC") and stated that Meyer did not maintain the ability

to perform activities within a schedule or to maintain attendance or punctuality within

ordinary tolerances.  R. 246-49.  The narrative portion of this RFC assessment does

not specify the relevant period, but Dr. Lankford checked a box on the form stating

that the assessment was for "current evaluation" rather than for evaluation as of Meyer's date last insured or a particular onset date.  R. 246.

John Wiley, M.D., reviewed medical evidence of Meyer's physical condition on behalf of the SSA.  R. 250-57.  He noted Meyer's complaints of disc disease, shoulder pain, fibromyalgia, arthritis, chest pain, and other ailments.  He noted that Meyer had not been diagnosed with fibromyalgia or any chronic pain syndrome.  He reviewed the records of the consultative examination by Dr. Long and concluded that the alleged limitations were not wholly supported by the medical evidence of record. He assessed her with no postural or manipulative limitations.

The record also contains evidence of Meyer's medical treatment from 2009 through 2013, long after her date last insured.  *See* R. 272-75 (treatment at Gulf Coast Medical Center in April 2009 for chest pain and other problems); R. 319 (treatment by Dr. Winston, family physician, in 2011); R. 277-81 (prescription records from 2011); R. 282-317, 334-38 (treatment by various providers in 2012 for chest pain and probable hernia).

On March 20, 2013, Meyer appeared with counsel for an administrative hearing regarding her application for benefits. R. 339-78.  Under questioning by her attorney, Meyer testified that since February 2008 she had physical problems including shortness of breath and heaviness in her chest.  R. 360.  She further testified that she

had anxiety and depression, mood swings, trouble sleeping, loss of appetite, inability to concentrate, and problems getting along with other people.  R. 361-62.  A medical expert testified and confirmed for the ALJ that there were no records from the relevant period, and that the closest in time were dated July 2008.  R. 365-71.  Upon questioning from Meyer's attorney, the medical expert acknowledged that Meyer appeared to have some psychological limitations at the time of her psychological examination, R. 370, which was six months after her date last insured.  A vocational expert also testified that, if Meyer were found to have marked limitations in maintaining a work schedule, she would not be able to maintain employment.  R. 371-77.  The vocational expert's testimony did not make reference to any particular time period.

On April 23, 2013, the ALJ issued his opinion finding that Meyer was not disabled between February 17 and March 31, 2008.  R. 14-21.

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.   <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence.  *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is more than a

mere scintilla and less than a preponderance.  *Id*.; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.  *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).   In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).   If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).   Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).   The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.   In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.  *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

IV.   **ANALYSIS**

A.   **Statutory Basis for Benefits**

Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.  42 U.S.C. § 423(c) & (d).  "Disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

B.   **Determination of Disability**

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.  *Perez*,

415 F.3d at 461; *Newton*, 209 F.3d at 453.[3]  The claimant has the burden to prove

Disability under the first four steps.  *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

If the claimant successfully carries this burden, the burden shifts to the Commissioner

at Step Five to show that the claimant is capable of performing other substantial

gainful employment that is available in the national economy.  *Perez*, 415 F.3d at 461;

*Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.  Once the Commissioner

makes this showing, the burden shifts back to the claimant to rebut the finding.  *Perez*,

415 F.3d at 461; *Newton*, 209 F.3d at 453.  A finding that a claimant is disabled or is

not disabled at any point in the five-step review is conclusive and terminates the

analysis.  *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

In this case, the ALJ determined at Step One that Meyer had not engaged in

substantial gainful activity in the period between her amended alleged onset date of

February 17, 2008, and her date last insured of March 31, 2008.  At Step Two, he

found that Meyer had three severe impairments:   status post fusion at L4-5;

depression; and anxiety.   At Step Three, he found that Meyer's impairments,

considered singly or in combination, did not meet or medically equal an impairment

---

[3]      The Commissioner's analysis at Steps Four and Five is based on the assessment of the
claimant's residual functional capacity ("RFC"), or the work a claimant still can do
despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The
Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

listed in the Social Security regulations.

Before proceeding to Step Four, the ALJ considered Meyer's residual functional capacity ("RFC").  He concluded that, through her date last insured, Meyer had the RFC "to perform light work as defined in 20 CFR § 404.1567(b) involving simple, repetitive tasks and minimal contact with the public."  R. 18.  At Step Four, the ALJ determined that Meyer was not able to perform her past relevant work during the relevant period.  At Step Five, considering her age, education, work skills, experience, and RFC, he determined that Meyer was capable of performing jobs existing in the national economy, in particular, the positions of office helper, small products assembler, and routing clerk.  He therefore concluded that Meyer was not under a disability between February 17 and March 31, 2008.

## C.   <u>Plaintiff's Arguments for Reversal</u>

Plaintiff argues that the ALJ erred in his determination of the date of onset for her disability and that he failed properly to consider all of the evidence.  As stated above, Meyer's period of eligibility under the current application for disability benefits is from February 17, 2008 (the onset date requested by her counsel at her hearing) and March 31, 2008 (her "date last insured" based on her earnings records).

Meyer bears the burden to show that she was disabled prior to her date last insured.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).  Because the case

currently before the Court involves only an application for disability benefits under Title II, and not SSI benefits under Title XVI, the "date last insured" of March 31, 2008, is the cutoff date for Meyer's eligibility.[4]  Therefore, even if Meyer could establish disability after March 31, 2008, such a showing would not entitle her to benefits based on her current application.

The only date open to question, therefore, is Plaintiff's onset date.  Plaintiff argues in her briefing that February 17, 2008, the onset date used by the ALJ, is incorrect because Meyer had been disabled "for years" and some professionals have concluded that she was disabled "at some point in time."  Plaintiff's Brief [Doc. # 13], at 17.  However, Plaintiff's briefing does not propose an alternate date of onset for her disability.  Moreover, as Plaintiff acknowledges, the ALJ adopted the February 17, 2008 onset date *at the request of Plaintiff's counsel*.[5]  Nevertheless, the Court briefly will examine the grounds for adopting an earlier onset date for Meyer.

---

[4]     Disability benefits under Title II are provided for persons who are both insured *and* disabled, regardless of indigence. 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability).  In contrast,  SSI benefits under Title XVI are provided for persons who meet the program requirements of disability and indigence, with no requirement of insured status based on earnings.  42 U.S.C. § 1382c(a)(3) (definition of disability); 42 U.S.C. § 1382a (financial requirements).

[5]     In her application for disability benefits, filed on April 28, 2011, Meyer had alleged that her disability began on March 31, 2009.  However, at her administrative hearing, her counsel amended the alleged onset date to February 17, 2008, the date of her fiftieth birthday.  R. 14 (ALJ opinion); R. 345 (administrative hearing).

When determining a claimant's alleged onset date, courts look to the onset date alleged by the claimant, the claimant's work history, and the medical evidence, with the medical evidence being the primary element for determination. *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993) (citing Social Security Ruling ("SSR") 83-20). In this case, the ALJ adopted the date requested by Plaintiff.[6] Meyer has directed the Court to no evidence in the record that she received medical treatment between May 2006 and July 2008. No physician has provided an opinion stating that Meyer was disabled within the relevant period. Substantial evidence therefore supports the ALJ's conclusion that Plaintiff did not meet her burden to show disability in February and March 2008. *Audler*, 501 F.3d at 447; *Perez*, 415 F.3d at 461.

The Court further notes that the record in this case contains no retrospective medical diagnosis that pertains to Meyer's condition during the relevant period. In some cases, the courts have looked to retrospective diagnoses as satisfactory evidence of an onset of disability, even when the claimant was unable to produce medical

---

[6]   Meyer's briefing cites to SSR 83-20 in support of her argument that the ALJ in her case erred by failing to consult a medical advisor to determine the onset date for her disability. This argument is unavailing. In cases in which the medical evidence is *ambiguous* as to onset, such as cases in which an impairment is slowly progressive, SSR 83-20 provides guidance for inferring the proper date of onset. *See Spellman*, 1 F.3d at 361. As stated above, the ALJ in this case adopted the onset date proposed by Plaintiff's counsel. In any event, SSR 83-20 is not triggered in this case because the medical evidence is not ambiguous as to the period between February 17 and March 31, 2008. Rather, there is no medical evidence or medical opinion specific to that period.

records from the relevant period.  *See*, *e.g.*, *Likes v. Callahan*, 112 F.3d 189 (5th Cir. 1997).   In this case, however, none of Meyer's examining physicians issued a retrospective diagnosis.   The one-page form completed by Dr. Hartman stating that Meyer was permanently disabled was completed in July 2008, three months after Meyer's date last insured, and does not indicate that Dr. Hartman intended his opinion regarding disability to be retrospective. R. 276.[7]  Similarly, although Meyer urges the Court to use the date of Dr. Adams' consultative examination, which was September 25, 2008, and to infer an onset date six months prior, on March 25, 2008 (approximately one week before Meyer's date last insured), Dr. Adams' report makes

---

[7]     The Court notes that Dr. Hartman treated Meyer years before the relevant period, in 2005 and 2006.   Among other things, Dr. Hartman prescribed medications for depression and anxiety.   This record of treatment of Meyer's conditions, however, cannot suffice as evidence that Meyer was *disabled* based on these conditions.   As stated above, Plaintiff has not directed the Court to any evidence that Meyer was treated by Dr. Hartman, or anyone else, between May 2006 and July 2008.

In addition, to the extent that Meyer argues that the ALJ's treatment of Dr. Hartman's July 2008 statement violated *Newton*, 209 F.3d at 456, this argument is unavailing. An opinion from a treating physician may be rejected by the ALJ for "good cause" if the physician's opinion is brief and conclusory, is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.   *Newton*, 209 F.3d at 455-56; *Greenspan,* 38 F.3d at 237.   In this case, in addition to being outside the relevant period, Dr. Hartman's statement on the one-page form was conclusory and unsupported by contemporaneous treatment records. *See* R. 276.  *See also* 20 C.F.R. § 404.1527(d)(1) ("[The SSA is] responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

no retrospective diagnosis.[8]  Plaintiff identifies no basis for the ALJ to have extended Dr. Adams' assessment to the previous six-month period.[9]  In fact, Plaintiff has not directed the Court to any evidence of disability, whether medical or lay evidence, that is specific to the relevant period.  *Cf. Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000) (copious lay evidence supported Loza's allegations of symptoms in period before insured status lapsed); *Likes*, 112 F.3d at 191 (corroborating lay evidence can be used to support retrospective medical diagnosis).

Plaintiff also argues that the ALJ failed to consider all the relevant evidence, apparently referring to the ALJ's failure to find Meyer disabled based on the opinions of Dr. Lankford and Dr. Adams.  Plaintiff is correct that the ALJ's opinion does not discuss the opinions of these doctors, other than a citation to Dr. Adams' report at Step Three of his five-step analysis.  R. 17.  However, Plaintiff's argument is unavailing because, as stated earlier, Drs. Lankford and Adams' assessments occurred

---

[8]   To the contrary, Dr. Adams stated that Meyer's "prognosis for occupational adjustment ***in the near future*** is poor."  R. 236 (emphasis added).

[9]   The reviewing opinion by Dr. Lankford, who did not examine Meyer, suggested an onset date of July 1, 2008, three months prior to Dr. Adams' examination.  However, even if the Court were to accept this suggestion as a retrospective diagnosis, the date is three months after Meyer's date last insured, and is therefore fails to support Meyer's argument.

after the relevant period.[10]  Plaintiff has supplied the Court with no valid basis to apply these assessments to the relevant period, and in fact has not cited to any evidence from the relevant period that supports her claim of disability.

The ALJ's opinion denying benefits for the relevant period is supported by substantial evidence and must be affirmed.

## V.   **CONCLUSION**

The question before this Court is whether the ALJ's determination is supported by substantial evidence. *Audler*, 501 F.3d at 447; *Perez*, 415 F.3d at 461.  The ALJ used an onset date of February 17, 2008, based on Plaintiff's request.  As the ALJ noted, the record lacked any medical evidence for nearly two years prior to February 17, 2008.  R. 19.  Plaintiff's protestations that the ALJ should have used an earlier onset date, without specifically proposing an alternate date or providing any evidence in support of her request, fails to demonstrate that the ALJ erred.

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Summary Judgment Motion [Doc. # 12] is **DENIED**.  It is further

**ORDERED** that Defendant's Cross-Motion for Summary Judgment [Doc.

---

[10]    Moreover, the ALJ did not err by failing to analyze the opinions of Drs. Lankford and Adams under the *Newton* criteria because neither of these doctors was Meyer's treating physician.  *See Newton*, 209 F.3d at 455.

# 14] is **GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **15th** day of **October, 2014**.

Nancy F. Atlas
United States District Judge